IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ELIZABETH CULPEPPER,               )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )    CASE NO.: 2:12-cv-767-MEF
                                   )         (WO–Publish)
STRYKER CORP., *et al.*,            )
                                   )
        Defendants.                )

**MEMORANDUM OPINION AND ORDER**

Now before the Court is a Notice of Removal (Doc. #1) filed by Defendants

Howmedica Osteonics Corporation ("Howmedica"),[1] Stryker Sales Corporation ("Stryker

Sales"), and Stryker Corporation ("Stryker") (collectively, the "Corporate Defendants") on

September 4, 2012, and a Motion to Remand (Doc. #15) filed by Plaintiff Elizabeth

Culpepper ("Plaintiff" or "Culpepper") on October 4, 2012.  After careful consideration of

the law, the evidence and arguments presented, and the record as a whole, the Court finds

that Plaintiff's Motion to Remand is due to be DENIED.

**I.  FACTUAL AND PROCEDURAL HISTORY**

This is a product liability action.  Culpepper underwent a left total knee arthroplasty

(commonly referred to as a "knee replacement") on November 6, 2009, at Jack Hughston

Memorial Hospital ("JHMH") in Phenix City, Alabama.  (Doc. #1-2.)  Culpepper's surgeon

implanted a Stryker Triathlon Posteriorly Stabilized Total Knee Replacement System

---

[1] Howmedica does business as Stryker Orthopaedics and is the manufacturer of the medical
device at issue here.  (Docs. #1-2, 17.)

("Triathlon") in place of her left knee joint. (Doc. #1-2.)

Culpepper suffered severe pain and discomfort following the surgery. (Doc. #1-2.) As a result, on December 2, 2009, Culpepper underwent a revision surgery to remove and to replace a component of the Triathlon that had failed. (Doc. #1-2.) On May 10, 2010, Culpepper underwent a second revision surgery during which the entire Triathlon implant was removed. (Doc. #1-2.) Due to continuous pain, Culpepper underwent three more revision surgeries on June 25, 2010, March 9, 2012, and June 13, 2012. (Doc. #1-2.) Culpepper alleges that she suffered and will continue to suffer physical pain and emotional distress as a result of these events. (Doc. #1-2.)

In her Complaint, Culpepper alleges that Howmedica, Stryker Sales, and Stryker designed, tested, manufactured, marketed, distributed, and sold the Triathlon, despite its known and serious side effects.[2] (Docs. #1-2, 15-1.) Culpepper further alleges that Brennan Blackmon ("Blackmon") is a Stryker sales representative who marketed, distributed, and sold the Triathlon in greater Birmingham, Alabama (which does not include Phenix City, Alabama, where JHMH is located), and who is believed to have met and visited with hospitals in Alabama, including JHMH, to engage in these activities. (Docs. #1-2, 15-1.) Culpepper claims that Defendants knew of the "defective and unreasonably dangerous nature of the Triathlon" but concealed and suppressed these facts from hospitals, physicians, and

---

[2] Culpepper's Complaint confusingly makes this allegation against all "Defendants," including Blackmon. (Doc. #1-2.) However, as explained in more detail below, the Court is confident that Blackmon was not involved in the design, testing, or manufacturing of the Triathlon and instead attributes this type of generalized allegation, which occurs throughout the Complaint, to lackadaisical pleading by Culpepper.

the consuming public, including Culpepper and her physician.  (Doc. #1-2.)  Culpepper, however, makes no specific allegations as to the particular facts Defendants are alleged to have misrepresented, concealed or suppressed from Culpepper, JHMH, or Culpepper's physicians regarding the implant used in her knee replacement surgery. (Doc. #1-2.) Culpepper also fails to allege when these misrepresentations or concealments were made, which specific Defendant made which specific misrepresentations or concealed which specific fact, and specifically to whom Defendants made these misrepresentations or from whom Defendants concealed information regarding the Culpepper's implant.  (Doc. #1-2.)

On June 26, 2012, Culpepper filed suit in the Circuit Court of Bullock County, Alabama, asserting various claims against Howmedica, Stryker, Stryker Sales, and Blackmon.  (Doc. #1-2.)  In her Complaint, Culpepper brings claims against Defendants under Alabama's Extended Manufacturer's Liability Doctrine for strict product liability (specifically, for defective design, manufacturing defect, and failure to warn), as well as additional claims for negligence, breach of express and implied warranties, fraudulent misrepresentation and concealment; and deceptive trade practices.  (Doc. #1-2.)  Also, apparently anticipating a statute of limitations argument, Culpepper alleges that any applicable statute of limitations has been tolled by knowing and active concealment and denial of facts by Defendants; yet, Culpepper provides no specific facts to support these allegations.  (Doc. #1-2.)

As to the jurisdiction, Culpepper alleges that she was a resident of Bullock County, Alabama, while Stryker and Stryker Sales are organized in New Jersey and have their

principal places of business in Michigan,[3] making them citizens of both New Jersey and Michigan.  (Doc. #1-2); *see also* 28 U.S.C. § 1332(c)(1).  Howmedica was organized in New Jersey with its principal place of business in New Jersey, making it a citizen of New Jersey.  (Doc. #1-2.)  Finally, Blackmon lives and does business in Alabama,[4] making him a citizen of Alabama.[5]  (Doc. #1-2.)

On September 4, 2012, Howmedica, Stryker, and Stryker Sales[6] removed this cause of action to federal district court pursuant to 28 U.S.C. § 1332 (diversity of citizenship).  (Doc. #1.)  The Corporate Defendants claim that this matter was properly removed because complete diversity of citizenship exists, as no defendant is a citizen of the same state as Culpepper.  In making this argument, the Corporate Defendants claim that Blackmon's citizenship should be disregarded because he was fraudulently joined solely to defeat

---

[3] While Culpepper's Complaint alleges that Stryker and Stryker Sales were organized under the laws of the State of New Jersey with their principal places of business in Michigan, making them citizens of both New Jersey and Michigan for diversity of citizenship purposes, the Corporate Defendants' filings indicate that Stryker and Stryker Sales were actually organized under the laws of the State of Michigan with their principal places of business in Michigan, thus making them citizens of Michigan only.  (*Compare* Docs. #1-2, *with* #1.)  This discrepancy, however, has no bearing on the Court's diversity jurisdiction analysis because the state of citizenship at issue here is Alabama–not Michigan or New Jersey.

[4] Although Culpepper alleges that Blackmon lived and worked in Birmingham, Alabama, during the relevant time period, the undisputed evidence shows that Blackmon actually lived in Dothan, Alabama and worked in the surrounding areas.  (*Compare* Docs. #1-2, *with* #1-3.)

[5] While Culpepper's Complaint also asserts claims against "Fictitious Defendants A, B, C, and D," there is no fictitious party pleading in federal court, and therefore, the citizenship of such defendants is disregarded when analyzing whether diversity of citizenship exists between the parties.  *See* 28 U.S.C. § 1441(b)(1).

[6] Out of what appears to be an abundance of caution, Blackmon joined in and consented to removal but maintained his argument that he was fraudulently joined.  (Doc. #1-3.)

diversity.  (Doc. #1.)  More specifically, the Corporate Defendants argue that there is no possibility that Culpepper can establish a cause of action against Blackmon in state court, thus making his joinder fraudulent.  The Corporate Defendants base this argument on their claims that Blackmon had no involvement with Culpepper's procedures or the device implanted in her, and even if he had, any claim Culpepper may have against Blackmon is time-barred.  (Doc. #1.)  With their Notice of Removal, the Corporate Defendants submitted Blackmon's sworn Affidavit in which he testifies that: (1) he has been an independent contractor with K&W Associates, Inc. ("K&W") since 2003 and was not employed by Stryker (although he does testify to selling Howmedica/Stryker products); (2) he has never made sales to anyone at JHMH or any physician affiliated with JHMH; (3) K&W's sales territory does not include Phenix City, Alabama; (4) JHMH has never been in his sales territory, which includes Ozark, Enterprise, and Dothan, Alabama; (5) he has never participated in a surgical procedure at JHMH; (6) he has never spoken to Culpepper or anyone who treated her; and (7) no other K&W salesperson has made sales to JHMH.  (Doc. #1-3.)  Culpepper mentions Blackmon by name only four times in her Complaint (not including the style), and never in the substantive counts.

On October 4, 2012, Culpepper filed a Motion to Remand this action back to the Circuit Court of Bullock County, Alabama, arguing that there is a possibility that she can establish at least one of her claims against Blackmon in state court.  (Doc. #15.)  The only evidence Culpepper submitted in support of her motion is: (1) an unauthenticated copy of Blackmon's business card, which shows the word "Stryker" on it; (2) unauthenticated

5

documents from the 2012 Alabama Orthopaedic Society's Annual meeting, an Alabama Podiatric Medical Association Seminar, and a 2009 newsletter from the Mississippi Orthopaedic Society, which associate K&W with Stryker; and (3) some unauthenticated LinkedIn profiles of individuals who represent that they work for both K&W and Stryker. (Doc. #19.)  Both parties have moved to strike the other's evidentiary submissions.  (Docs. #19, 20.)

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction.  *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  As such, federal courts have the power to hear only cases that they have been authorized to hear by the Constitution or by the Congress of the United States.  *See Kokkonen*, 511 U.S. at 377.  One type of case that Congress has empowered federal courts to hear are cases that have been removed by a defendant from state to federal court if the plaintiff could have brought his or her claims in federal court originally.  *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The removing defendant bears the burden of demonstrating that a district court has original jurisdiction over the subject matter of an action.  *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).  Although remanding a case back to state court is the favored course of action when the existence of federal jurisdiction is not absolutely clear, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."  *Burns*, 31 F.3d at 1095; *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

## III. DISCUSSION

### A.      Motions to Strike

The Court must first resolve the parties' motions to strike before it can address Defendants' fraudulent joinder claims.  Defendants have moved to strike "new arguments and exhibits" they claim were submitted with Culpepper's reply brief in support of her motion to remand, alleging that these arguments have been waived because they were not first raised in her motion.  (Doc. #20.)  Culpepper has moved to strike Blackmon's affidavit as "fraudulent" and "self-serving."  (Doc. #19.)  The Court finds both arguments over-reaching and certainly not persuasive enough for the Court to decline considering either parties' evidentiary submission.  Thus, the motions to strike are denied.

### B.      Fraudulent Joinder

#### 1.      Fraudulent Joinder Standard

Section 1332(a) requires that the plaintiff and defendant be "citizens of different States[.]"  28 U.S.C. §1332(a); *see also Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("Federal diversity jurisdiction under [§ 1332(a)] requires 'complete diversity'–the citizenship of every plaintiff must be diverse from the citizenship of every defendant.").  However, even if "on the face of the pleadings, there is a lack of complete diversity. . ., an action may nevertheless be removable if the joinder of the non-diverse party . . . [was] fraudulent."  *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996)).  Indeed, "[t]he citizenship of a resident defendant fraudulently joined should not be considered by a

7

court for the purpose of determining diversity jurisdiction." *Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1118 (M.D. Ala. 1996).

Fraudulent joiner is a judicially created doctrine that provides an exception to the requirement of complete diversity. Federal courts have recognized three situations in which joinder may be deemed fraudulent: (1) when there is no reasonable possibility that the plaintiff can prove a cause of action against the non-diverse defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) when there is no real connection to the claim and the non-diverse defendant. *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4 (M.D. Ala. 2005).

Considering the first type of fraudulent joinder, which is the only type at issue here, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a [*reasonable*] *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287 (partial emphasis added). That is to say, if there is even a possibility that a state court would find that the complaint states a cause of action against the non-diverse defendant, remand is required. *See Legg*, 428 F.3d at 1325. Still, the possibility that the non-diverse defendant could be liable "must be *reasonable*, not merely theoretical," with "possible" meaning "more than such a possibility that a designated residence can be hit by a meteor tonight." *Id*. at n.5 (emphasis added).

Determining whether a resident defendant has been fraudulently joined "must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Id*. at 1322 (internal quotations and

emphasis omitted). "The proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under [Federal Rule of Civil Procedure 56]." *Id.* at 1322–23 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). "Accordingly, all *contested* issues of substantive fact and any uncertainties as to the current state of the law must be resolved in the plaintiff's favor." *Exum v. State Farm Fire and Cas. Co.*, 821 F. Supp. 2d 1285, 1290 (M.D. Ala. 2011) (citations omitted). However, "[w]hile the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment . . ., the jurisdictional inquiry must not subsume substantive determination." *Crowe*, 113 F.3d at 1538 (internal quotations omitted). "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's case beyond determining whether it is an arguable one under state law." *Id.* (internal citations omitted). However, where the non-moving party has presented unrebutted evidence in the form of an affidavit or declaration, courts must give weight to the sworn testimony rather than unsupported allegations in the complaint. *See Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207 (N.D. Ala. 2006).

### 2.     Fraudulent Joinder Analysis

The parties do not dispute that complete diversity of citizenship would exist in this case but for Blackmon being joined as a defendant. Thus, the issue for the Court to decide is whether Blackmon's joinder in this action is fraudulent for the purpose of defeating diversity jurisdiction. The Court concludes that it is.

Culpepper's Complaint asserts nine substantive claims[7] against Blackmon on "information and belief" that he "is a Sales Representative of Stryker Orthopaedics and marketed and promoted the sale of the Triathlon Knee that are [sic] the subject of this lawsuit to Plaintiff and Plaintiff's physician." (Doc. #1-3.)  The first three of these claims are strict product liability claims for defective design, manufacturing defect, and failure to warn brought under Alabama's Extended Manufacturer's Liability Doctrine ("AEMLD").  As to her defective design claim, Culpepper alleges that Defendants are "the researcher, developer, manufacturer, distributor, marketer, promoter, supplier and seller of the Triathlon Knee, which is defective and unreasonably dangerous" in that it is not reasonably fit, suitable or safe for its intended purpose, and that "Defendants knew or should have know of the danger associated with the use of the Triathlon Knee, as well as the defective nature," but disregarded any risks. (Doc. #1-3.)  As to her manufacturing defect claim, Culpepper alleges that "Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Triathlon Knee," which was defective in that it deviated from product specifications and posed a serious risk of harm. (Doc. #1-3.)  Finally, as to her failure to warn claim, Culpepper alleges that "Defendants are manufacturers, distributors, sellers, and suppliers of the Triathlon Knee," which was not accompanied by proper warnings and instructions regarding its potential adverse side effects. (Doc. #1-3.)  The Court finds no

---

[7] Culpepper also purports to assert a stand-alone claim against Blackmon for punitive damages, but the Court will not consider this claim as a separate viable cause of action but rather a request for an award of punitive damages. (Doc. #1-3.)

possibility that Culpepper could establish a cause of action for product liability against Blackmon under the AEMLD based on any of these theories in an Alabama state court.

The AEMLD establishes a cause of action against "a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, [thereby] constitut[ing] negligence as a matter of law." *Southern*, 471 F. Supp. 2d at 1215.  In order to establish liability under the AEMLD, Culpepper must prove:

> [She] suffered injury or damages to [herself] or [her] property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller was engaged in the business of selling such a product, and (b) it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold.

*Id.*  Thus, the issue here turns on whether Blackmon qualifies as a "seller" for liability purposes under the AEMLD based on the facts involved.

The Court finds the decisions reached by district courts in *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272 (S.D.N.Y. 2001), *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *1 (M.D. Ala. 2005), *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207 (N.D. Ala. 2006), and *Patterson v. DePuy Orthopaedics, Inc.*, 2011 WL 3047794, at *1 (N.D. Ohio 2011) persuasive.  The *Rezulin* case considered Alabama law and the predicted liability of a non-diverse pharmaceutical sales representative under the AEMLD.  In that case, the sales representative did not manufacture or sell the drug at issue to the decedent or the decedent's physician, and there was no connection between the sales representative and the decedent.  *Rezulin*, 133 F. Supp. 2d at 287.  This led the district court to conclude that

11

"there was no reasonable basis for supporting that [the AEMLD] would impose liability on the sales representative" at issue.  *Id.* at 288.

Relying on the *Rezulin* case, a court in this district held that a non-diverse sales representative who sold a defective hip replacement was "not deemed a 'seller' within the meaning of the AEMLD."  *Bloodsworth*, 2005 WL 3470337, at *6.  In that case, the sales representative forwarded orders to the manufacturer and then delivered them to the physicians in their original packaging.  *Id.* at *6.  The sales representative attested to the fact that he had never spoken to the patient at issue and did not have any involvement with the design or manufacturing of the product.  *Id.* at *2–3.  Moreover, there was no evidence that the sales representative had any significant control over the distribution of the product to the plaintiff or that he could have prevented distribution of the product to plaintiff in any meaningful way.  Based on this, the *Bloodsworth* court found that "the parameters of Alabama law are sufficiently clear so as to establish that there is no 'reasonable possibility' for concluding that, under the facts presented, an Alabama court would find [the sales representative] liable under the AEMLD."  *Id.* at *7 (citing *Legg*, 428 F.3d at 1324).

A court in the Northern District of Alabama subsequently relied on *Rezulin* and *Bloodsworth* to find that a non-diverse sales representative was not a seller within the meaning of the AEMLD.  *Southern*, 471 F. Supp. 2d at 1217. In that case, one sales representative admittedly called on the plaintiff's treating physician about the drug at issue but never provided the physician with written or verbal information or representations about using that particular drug to treat the plaintiff for chronic fatigue syndrome, which was an

off-label use. *Id.* at 1213. The other sales representative never called on physicians, including the plaintiff's physician, about the particular drug at issue. *Id.* at 1213. The evidence further showed that the sales representatives had no involvement with the manufacturing, developing, or testing of the drug, or with drafting its prescribing information, written warnings or labels. *Id.* at 1213. Under the specific facts of that case, the district court found the connection between the sales representatives and the plaintiff were too attenuated to support a reasonable possibility that an Alabama state court would impose liability on them under the AEMLD. *Id.* at 1217.

Finally, the district court in *Patterson*, relying on *Southern* and *Bloodsworth*, found that a non-diverse sales representative could not be held liable under the AEMLD and had been fraudulently joined as to that claim. In that case, the representative testified that he was an independent contractor who simply delivered implants that were ordered directly from the manufacturer in their original packaging. *Patterson*, 2011 WL 3047794 at *5–6. The sales representative further testified that he did not sell the product at issue and was not involved with its warnings, marketing, advertising, manufacturing or design. *Id.* at *5. With the sales representative's testimony uncontroverted, and because the evidence demonstrated that the sales representative had no control over the distribution of the product at issue beyond delivering orders, the district court found that there was no possibility, based on the facts involved, that the plaintiff could establish a cause of action against the sales representative under the AEMLD in an Alabama state court.

In this case, the connection between Blackmon and the product at issue is similar to

13

that of the sales representatives in *Rezulin* and even more attenuated than the connections between the sales representative and the products at issue in *Southern*, *Bloodsworth*, and *Patterson*, none of which found it reasonably possible that an Alabama state court would impose liability on the sales representatives as "sellers" under the AEMLD.  Blackmon testified in his Affidavit that he "had no involvement with any medical device or with any surgical procedure referenced in the Complaint."  (Doc. #1-3, ¶ 1.)  He works as an independent contractor for K&W, which sells Howmedica products,[8] but he has never sold products in Phenix City, Alabama, where Culpepper's surgery took place.  (Doc. #1-3, ¶ 4.) Blackmon has also never sold any products to JHMH, where Culpepper's surgery took place, to her physician, or to any other physician associated with that hospital.  (Doc. #1-3, ¶ 6.) Blackmon has never met Culpepper, talked with her, or talked with anyone treating her. (Doc. #1-3, ¶ 8.)  Blackmon has also had no involvement with the development, design, manufacturing, testing, or labeling of the product at issue in this case.  (Doc. #1-3, ¶ 1.) Simply said, there is no connection between Blackmon and the device implanted in Culpepper sufficient to support the conclusion that there is a reasonable possibility that an Alabama state court would impose liability on Blackmon as a "seller" under the AEMLD.

Culpepper encourages the Court to paint Blackmon's potential liability under the AEMLD with a broader brush, arguing that it is possible that an Alabama state court might

---

[8] Presumably, this would include the Triathlon implant at issue here, as Blackmon did not expressly refute or deny in his Affidavit that he sold or sells this product in connection with his position at K&W.  (Doc. #1-3.)  Rather, he disclaims ever selling any product to Culpepper, her physician, or the hospital where her surgery took place.  (Doc. #1-3.)

impose liability on Blackmon under the AEMLD based solely on his relationship as a distributor for Stryker. The Court refuses to make such a tenuous assumption, as did the court in *Rezulin*. Indeed, if such logic were true, then a plaintiff could routinely defeat federal jurisdiction by simply joining a non-diverse sales representative or agent of a pharmaceutical manufacturing company and claiming that some form of liability is "possible" based on a "connection" that arises from nothing more than their status as a representative or agent of the company. Something more is needed to move Culpepper's AEMLD claims against Blackmon based on a specific Triathlon device from theoretical to reasonably possible.

The Court is also not persuaded by Culpepper's unsubstantiated beliefs that Blackmon *could* have been involved in the circumstances giving rise to her claims and that discovery *might* establish his independent liability under the AEMLD. Beliefs are not evidence, no matter how well founded. In this case, Defendants have presented evidence of fraudulent joinder through Blackmon's Affidavit. Thus, to even create a dispute for the Court to decide in a light most favorable to the plaintiff, Culpepper had to come forward with some evidence that would demonstrate a reasonable possibility that Blackmon could be held liable for her AEMLD claim, which she has failed to do. *See Legg*, 428 F.3d at 1322–23 ("When the Defendants' affidavits are undisputed by the Plaintiffs, the court *cannot* then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations of the Plaintiffs' complaint.") (emphasis added); *Bloodsworth*, 2005 WL 3470337, at *5 ("In light of [the fraudulently joined defendant's] clear and concrete attestations disavowing any association

15

with . . . the products at issue, the court finds that Plaintiffs are precluded from relying on the averments in their Complaint to defeat removal.   Rather . . . Plaintiffs must offer contradicting *evidence*.").

Culpepper's evidence in this case consists of (1) an unauthenticated copy of Blackmon's business card, which shows the word "Stryker" on it; (2) unauthenticated documents from the 2012 Alabama Orthopaedic Society's Annual meeting, an Alabama Podiatric Medical Association Seminar, and a 2009 newsletter from the Mississippi Orthopaedic Society, which purport to show K&W associated with Stryker; and (3) some unauthenticated LinkedIn profiles of individuals who claim to work for both K&W and Stryker.  (Doc. #19.)  Even when viewing this evidence in Culpepper's favor, it does not controvert the testimony given in Blackmon's Affidavit.  Assuming the word "Stryker" on Blackmon's business card or medical seminar documents associating K&W with Stryker somehow prove that Blackmon was a Stryker employee, this does not change the fact that Culpepper has presented *zero* evidence controverting Blackmon's testimony that he never sold products to JHMH or any other physician associated with JHMH, including Culpepper's physician, that he never spoke to Culpepper or her physicians, and that he had no involvement whatsoever with any medical device or surgical procedure related to Culpepper.[9]

---

[9] Incredulously, Culpepper continues to maintain in her Motion to Remand that "Blackmon aggressively marketed the Triathlon to . . . Ms. Culpepper's physician" by "frequently calling on physicians, distributing samples to physicians for patient use, conducting educational seminars for physicians, and distributing sales literature to healthcare professionals and the consuming public." (Doc. #15-1.)  Yet, these specific allegations are not in the Complaint, are not supported by any actual evidence, and wholly disregard the testimony given by Blackmon in his sworn and uncontroverted Affidavit.

In short, absent any controverting evidence from Culpepper, the Court cannot assume that Culpepper could or would prove facts necessary to establish her AEMLD claims against Blackmon based solely on the unsupported allegations of her Complaint.  As such, the Court concludes that there is no reasonable possibility that Culpepper can establish an AEMLD claim against Blackmon in an Alabama state court.  Therefore, his joinder in this action as to Culpepper's AEMLD claims was fraudulent.

The Court reaches the same conclusion as to Culpepper's remaining claims against Blackmon for negligence, breach of implied and express warranties, misrepresentation, concealment, and deceptive trade practices.  Culpepper's negligence claim is one for negligent design, manufacturer and sale of a product.  (Doc. #1-3.)  However, such a claim "'is cognizable against the manufacturer or seller, and [the sales representative] is deemed neither under Alabama law.'"  *Patterson*, 2011 WL 3047794 at *3 (quoting *Bloodsworth*, 2005 WL 3470337 at *7).  The same applies to claims for breach of warranties.  *See Patterson*, 2011 WL 3047794 at *7 (finding that non-diverse sales representative could not be liable for breach of warranties when evidence was uncontroverted that he made no declarations or warranties about the product at issue to anyone) (citing cases).  Again, the controverted evidence establishes that Blackmon owed no duty to Culpepper, had no involvement with the design, manufacturing, or selling of the implant used in and later removed from Culpepper, and made no representations or warranties to anyone about the implant used in and later removed from Culpepper.  (Doc. #1-3.)  Moreover, to the extent Culpepper's negligence claim is based on Blackmon's failure to warn, the learned

17

intermediary doctrine precludes such a claim under Alabama law. *See Bloodsworth*, 2005 WL 3470337 at *7 (noting that, under the learned intermediary doctrine, the Alabama Supreme Court has limited any duty to warn to exist only between the manufacturer and the plaintiff's surgeon, not a sales representative).  Thus, the Court finds that there is no possibility that Culpepper could establish a negligence or breach of warranty claim against Blackmon in Alabama state court.  Therefore, Blackmon's joinder as to these claims was fraudulent.

Finally, the Court finds that there is no possibility that Culpepper could establish a misrepresentation, suppression, concealment, or deceptive trade practices claim against Blackmon in an Alabama state court.[10]  Culpepper alleges that Blackmon willfully, wantonly, and recklessly disregarded his obligation to provide truthful representations regarding the safety and risk of the Triathlon to Culpepper, the medical community, and other consumers. (Doc. #1-2.)  Culpepper further alleges that Blackmon concealed information about the Triathlon's safety and risks with the intent that doctors and patients rely on the misinformation.  (Doc. #1-2.)  Finally, Culpepper alleges that Blackmon misrepresented the safety and effectiveness of the Triathlon, while knowing that it would not conform to his representations, and also concealed knowledge of the serious risks association with the Triathlon and misrepresented testing and research data.  (Doc. #1-2.)

---

[10]  Because the Court has found that there is no reasonable possibility that Culpepper can establish any of her claims against Blackmon in an Alabama state court as a matter of law, at this juncture, it need not address the merits of the Corporate Defendants' alternative argument that Blackmon's joinder was fraudulent because Culpepper's claims against him are time-barred.

To establish a claim for fraudulent misrepresentation, a plaintiff must show that: (1) the defendant made a misrepresentation; (2) the misrepresentation concerned a material existing fact; (3) the plaintiff relied on the misrepresentation; and (4) the reliance was to the plaintiff's detriment. *Jewell v. Seaboard Indus.,* 667 So. 2d 653, 657–658 (Ala. 1995). To establish a cause of action for suppression/concealment, a plaintiff must show that: (1) the defendant had a duty to disclose material facts; (2) the defendant concealed or failed to disclose those facts; (3) the concealment or failure to disclose induced the plaintiff to act; and (4) the defendant's action resulted in harm to the plaintiff. *Id.* A duty to communicate can arise from a confidential relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information, but mere silence in the absence of a duty to disclose is not fraudulent. *Id.*

In this case, even under the most liberal interpretation of the Complaint, Culpepper could not establish a claim against Blackmon for fraudulent misrepresentation, concealment/suppression, or deceptive trade practices (which is based on misrepresentation claims). There are no allegations as to what information or facts Blackmon specifically misrepresented or concealed from Culpepper, her physicians, JHMH, or the consuming public about the Triathlon implant.[11] (Doc. #1-2.) Moreover, Blackmon's uncontroverted

_____

[11] Contrary to the Corporate Defendants' assertions, "reliance on federal authority for a minimum pleading standard is improper" in a fraudulent joinder analysis. *Hampton v. Georgia-Pacific, LLC*, 2011 WL 5037403, at *4 (S.D. Ala. 2011). The Court finds such logic reasonable, as state pleading standards for fraud, while still heightened, are more lenient than federal pleading standards. *See Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006) ("[T]he decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium

Affidavit establishes that he had no involvement with any medical device or surgical procedure involving Culpepper.  (Doc. #1-3.)  Blackmon never spoke to Culpepper, her physicians, or anyone who treated her.  (Doc. #1-3.)  Blackmon never made sales to Culpepper, her physicians, or JHMH, where her surgery took place.  (Doc. #1-3.)  Blackmon's sales territory did not cover JHMH.  (Doc. #1-3.)  In short, Blackmon made no representations to anyone about the Triathlon device that was implanted and eventually removed from Culpepper, he had no involvement with its design, development, manufacturer, testing, or labeling, and he had no knowledge of the alleged defect with Culpepper's particular implant.  Taking this together, the Court concludes that there is no reasonable possibility that Culpepper could establish a fraudulent misrepresentation, concealment/suppression, or deceptive trade practices claim against Blackmon.

To the extent Culpepper's misrepresentation claim is founded in negligence, such a claim would not necessitate remand in this instance.  In *Legg*, the Eleventh Circuit, applying Alabama law, explained that a negligent misrepresentation claim is not viable against a pharmaceutical sales representative absent a showing of bad faith.  *Legg*, 428 F.3d at 1324.  "[T]hose who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith."  *Id.*  Here, there is no evidence that Blackmon made any representations to Culpepper, her physician, JHMH, or the consuming public about the Triathlon implant, much less made any

---

between the federal and state judiciaries that our federal system demands.").

representations in bad faith.

While Culpepper argues that the *Legg* case in not applicable here, the Court finds otherwise.  First, the *Legg* case discussed the merits of the district court's remand order.  Second, the court's reliance on *Fisher v. Comer Plantation*, 772 So. 2d 455 (Ala. 2000) in *Legg* does not change its guiding nature here.  Although Culpepper correctly notes that *Legg* cites *Fisher* for the proposition that "mere conduits" cannot be held liable for participating in a tort unless bad faith is shown, she points out that *Fisher* involved an independent contractor rather than employee unlike this case.  (Doc. #15-1.)  Indeed, Culpepper claims that "[t]he sales representative defendants here are not independent contractors, but are employed, trained, supervised, and otherwise, under the direction of *Merck*."  (Doc. #15-1) (emphasis added).  To this Court's knowledge, there is only one defendant sales representative here, and he is not employed by Merck.  Nor is Merck a defendant in this action.  Moreover, Blackmon testified in his Affidavit that he *is* an independent contractor of K&W, and Culpepper's submission of an unauthenticated business card purportedly belonging to Blackmon which has the word "Stryker" on it does not controvert his clear testimony.  Finally, Culpepper claims that, unlike the plaintiffs in *Legg*, she has disputed Blackmon's affidavit.  (Doc. #15-1.)  This is simply not so.  Culpepper's sparse evidentiary submission does not meaningfully refute the clear and specific testimony in Blackmon's Affidavit.  Accordingly, the Court does not find it reasonably possible that Culpepper could establish a cause of action against Blackmon for negligent misrepresentation in an Alabama state court.

21

Because the Court has found that there is no reasonable possibility that Culpepper can establish any of her claims against Blackmon in an Alabama state court, his joinder in this action was fraudulent.  Therefore, Blackmon's citizenship will be disregarded for purposes of diversity jurisdiction, and the Court finds that complete diversity of citizenship exists between Culpepper and the remaining Corporate Defendants.

## C.  Amount in Controversy

Having found that complete diversity of citizenship exists between the parties, the Court must decide the other part of the diversity equation–whether the $75,000 amount in controversy has been met.  28 U.S.C. § 1332(a) (the amount in controversy for diversity of citizenship is satisfied if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs").  The Court finds that it has.

Where, as here, a plaintiff "makes an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds . . . the jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal quotations omitted). It may be facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, and in others, the defendant may meets it burden by proffering summary judgment-type evidence. *Id.*  A district court may "make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable.  Put simply, a district court need not 'suspend reality or shelve common sense in determining whether the face of a complaint .

22

. establishes the jurisdictional amount.'" *Id.* (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754, 770 (11th Cir. 2010)).

Here, the Court is satisfied from the face of the Complaint that the amount in controversy has been met.  Culpepper alleges she has undergone three revision surgeries in addition to her original knee replacement surgery as a result of the defective implant.  She claims that she has and will continue to suffer severe and possibly permanent injuries, emotional suffering and pain, loss of earnings, and medical expenses.  Culpepper is also seeking punitive damages, which must be considered in any calculation of the amount in controversy.  *See Rae v. Perry*, 392 Fed. App'x 753, 755 (11th Cir. 2010).  Moreover, product liability actions in Alabama routinely result in verdicts in excess of $75,000, exclusive of interest and costs.  Taking these factors together, and relying on reality and common sense, the Court finds that the jurisdictional amount in controversy has been met.

## IV.  CONCLUSION

Based on the foregoing, it is hereby ORDERED as follows:

(1)     Plaintiff's Motion to Remand (Doc. #15) is DENIED, and Defendant Blackmon is DISMISSED from this action WITH PREJUDICE;

(2)     Defendant Blackmon's Motion to Dismiss (Doc. #5) is DENIED as MOOT;

(3)     The parties' Motions to Strike (Docs. #19, 20) are DENIED;

(4)     The Corporate Defendants' Motion for Partial Summary Judgment (Doc. #4) is DENIED with LEAVE TO REFILE; and

(5)     The stay of this case, as ordered by this Court's Order dated September 25,

2012 (Doc. #14) is LIFTED.

DONE this the 12th day of September, 2013.

_____/s/ Mark E. Fuller_____
UNITED STATES DISTRICT COURT